Receipt #-Goo485

ORIGINAL

FILED
MAY - 3 2007
U.S. COURT OF FEDERAL CLAIMS

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**GRUNLEY-WALSH, LLC**
**(f/k/a Grunley-Walsh Construction JV)** *

**Plaintiff,** *

**v.** * **Case No. :** 07-281 C
**Judge:**

**THE UNITED STATES OF AMERICA** * **(A/E Additional Fees Claim)**

**Defendant.** *

* * * * * * * * * * * * *

**COMPLAINT**

Plaintiff, Grunley-Walsh, LLC, formerly known as Grunley-Walsh Construction JV, ("Grunley-Walsh"), by its counsel, Roger C. Jones, Esq., of Huddles Jones Sorteberg & Dachille, P.C., sues the United States of America ("United States"), and for its Complaint in the above matter, respectfully states as follows:

**Jurisdiction**

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1491. Plaintiff brings this action pursuant to the Contract Disputes Act of 1978, as amended, 41 U.S.C. § 601 *et seq.* In addition, this action is related to Case Nos. 1:06-cv-00721-CFL, 1:06-cv-00723-CFL, 1:04-cv-00815-CFL, 1:06-cv-00816-CFL, 1:06-cv-00837-CFL and 1:07-cv-00085-CFL, 1:07-cv-00189-CFL, 1:07-cv-00190-CFL, 1:07-cv-00197-CFL and 1:07-cv-00200-CFL as it arises out of the same contract and, therefore, should be consolidated with the aforesaid cases.

2. By Order dated March 14, 2007, this Court consolidated Case Nos. 1:06-cv-00721-CFL, 1:06-cv-00723-CFL, 1:04-cv-00815-CFL, 1:06-cv-00816-CFL, 1:06-cv-00837-CFL and 1:07-cv-00085-CFL and directed that all future filings designate Case No. 1:06-cv-00721-CFL as the lead case. The appeals in Case Nos. 1:07-cv-00189-CFL, 1:07-cv-00190-CFL, 1:07-

cv-00197-CFL and 1:07-cv-00200-CFL were filed after the Court's March 14, 2007 Order and, as such, have not yet been consolidated.

## The Parties

3. Plaintiff, Grunley-Walsh, is a general contractor in the construction industry organized and existing under the laws of the State of Maryland, with its principal place of business located at 5010 Nicholson Lane, Suite 200, Rockville, Maryland 20852.

4. Defendant is the United States of America.

## The Certified Claim for Unpaid and Additional A/E Services

5. This action relates to a December 28, 2006 certified claim, in the amount of $525,300 submitted by Grunley-Walsh to the Contracting Officer (the "Certified Claim") pursuant to the Changes clause and the Disputes clause in the Contract. A copy of the Certified Claim is attached as **EXHIBIT A**.

6. By letter dated March 2, 2007 (attached as **EXHIBIT B**), the Contracting Officer advised that a Final Decision on the Certified Claim would be issued by May 1, 2007.

7. By letter dated May 1, 2007 (attached as **EXHBIT C**), the Contracting Officer issued a Final Decision denying the Certified Claim.

8. This action appeals the Final Decision denying the Certified Claim.

9. All conditions precedent for the filing of this action have been satisfied, waived and/or excused.

## The Contract

10. On May 6, 1998, the United States, acting by and through the Department of the Interior – National Park Service, awarded Grunley-Walsh an Indefinite Quantity Contract (Contract No. 1443CX305998901) (the "Contract") to stabilize and preserve the Washington

Monument (the "Project"). The Contract is incorporated by reference herein, but is not attached due to its voluminous nature. Defendant has a copy of the Contract in its possession.

11. Pursuant to Contract Modification No. 0007 ("Contract MOD 7"), dated November 15, 2001, the General Provisions to the Contract were deleted and replaced with revised contract clauses which included certain FAR provisions incorporated by reference. A copy of MOD 7 is attached hereto as **EXHIBIT D**. Two of these provisions were the Changes clause (FAR 52.243-04 August 1987) and the Disputes clause (FAR 52.233-01 December 1998).

12. In accordance with the Contract, the following Task Orders were issued to provide services for Schematic Design, Design Development and Supplemental Services for the Washington Monument Vehicle Barrier System and for a potential Underground Visitor Screening Facility (the "A/E TOs"):

| Task Order | Task Order No. | Date | Description | Original Task Order Amount | Total Task Order Modifications | Adjusted Task Order Amount |
|---|---|---|---|---|---|---|
| 19 | T3059989119 | 11/15/2001 | Miscellaneous Meetings | $9,985.00 | $0.00 | $9,985.00 |
| 20 | T3059989120 | 12/11/2001 | Design Competition | $60,000.00 | $0.00 | $60,000.00 |
| 21 | T3059989121 | 1/8/2002 | Miscellaneous Meetings | $9,985.00 | $0.00 | $9,985.00 |
| 22 | T3059989122 | 2/1/2002 | Geo Tech (Survey and Core Drilling) | $144,560.00 | $0.00 | $144,560.00 |
| 23 | T3059989123 | 2/7/2002 | Elevator Services (Cleaning) | $35,000.00 | ($7,000.00) | $28,000.00 |
| 24 | T3059989124 | 2/25/2002 | Environmental Assessment Report | $178,499.00 | $5,698.91 | $184,197.91 |
| 25 | T3059989125 | 3/14/2002 | Cultural Landscape Report / Historic Structure Report | $378,043.00 | $96,371.00 | $474,414.00 |
| 26 | T3059989126 | 3/14/2002 | Security Assessment | $3,800.00 | $0.00 | $3,800.00 |
| 27 | T3059989127 | 3/21/2002 | Miscellaneous Meetings | $175,000.00 | $0.00 | $175,000.00 |
| 28 | T3059989128 | 4/11/2002 | Design Development - Landscape/Security Building | $2,536,673.00 | $426,941.00 | $2,963,614.00 |
| 29 | T3059989129 | 5/8/2002 | Value Analysis Report | $60,885.00 | $0.00 | $60,885.00 |
| 30 | T3059989130 | 7/29/2002 | Exhibit Design & Cost Estimate | $410,292.00 | $0.00 | $410,292.00 |
| 31 | T3059989131 | 11/6/2002 | Miscellaneous Meetings | $5,000.00 | $0.00 | $5,000.00 |
| 32 | T3059989132 | 1/7/2003 | Revised Schematic Design & NCPC/CFA Presentations | $195,406.00 | $140,576.00 | $335,982.00 |
| 33 | T3059989133 | 6/30/2003 | Measured Drawings/Leed Sessions | $10,120.00 | $0.00 | $10,120.00 |
| | | | TOTALS | $4,213,248.00 | $662,586.91 | $4,875,834.91 |

**Factual Background for the Certified Claim**

13. With respect to these A/E TOs, the following payments have been received and the following unpaid balances remain:

| Task Order | Description | Original Task Order Amount | Total Task Order Modifications | Adjusted Task Order Amount | Total Task Order Payments Received | Unpaid Task Order Balance |
|---|---|---|---|---|---|---|
| 19 | Miscellaneous Meetings | $9,985.00 | $0.00 | $9,985.00 | $9,985.00 | $0.00 |
| 20 | Design Competition | $60,000.00 | $0.00 | $60,000.00 | $60,000.00 | $0.00 |
| 21 | Miscellaneous Meetings | $9,985.00 | $0.00 | $9,985.00 | $9,985.00 | $0.00 |
| 22 | Geo Tech (Survey and core drilling) | $144,560.00 | $0.00 | $144,560.00 | $144,560.00 | $0.00 |
| 23 | Elevator Services | $35,000.00 | ($7,000.00) | $28,000.00 | $28,000.00 | $0.00 |
| 24 | Environmental Assessment Report | $178,499.00 | $5,698.91 | $184,197.91 | $184,197.91 | $0.00 |
| 25 | Cultural Landscape Report / Historic Structure Report | $378,043.00 | $96,371.00 | $474,414.00 | $436,806.51 | **$37,607.49** |
| 26 | Security Assessment | $3,800.00 | $0.00 | $3,800.00 | $3,800.00 | $0.00 |
| 27 | Miscellaneous Meetings | $175,000.00 | $0.00 | $175,000.00 | $175,000.00 | $0.00 |
| 28 | Design Development - Landscape/Security Building | $2,536,673.00 | $426,941.00 | $2,963,614.00 | $2,949,010.36 | **$14,603.64** |
| 29 | Value Analysis Report | $60,885.00 | $0.00 | $60,885.00 | $60,885.00 | $0.00 |
| 30 | Exhibit Design & Cost Estimate | $410,292.00 | $0.00 | $410,292.00 | $110,460.12 | **$299,831.88** |
| 31 | Miscellaneous Meetings | $5,000.00 | $0.00 | $5,000.00 | $1,478.24 | **$3,521.76** |
| 32 | Revised Schematic Design & NCPC/CFA Presentation | $195,406.00 | $140,576.00 | $335,982.00 | $284,032.18 | **$51,949.82** |
| 33 | Measured Drawings/Leed Sessions | $10,120.00 | $0.00 | $10,120.00 | $3,731.00 | **$6,389.00** |
| | TOTALS | **$4,213,248.00** | **$662,586.91** | **$4,875,834.91** | **$4,461,931.32** | **$413,903.59** |

14. The reasons for non-payment of these outstanding Task Order balances vary and are summarized below by Task Order.

15. **Task Order 25:** Both the Historic Structure Report and the Cultural Landscape Report (including the final edits requested by the Park Service), required by this Task Order, have been completed and submitted. There is no reason why the unpaid balance of $37,607.49 should not be paid. As such, these costs are claimed herein.

16. **Task Orders 28 and 30:** The work of Task Order 28 involved preparation of the schematic design and design development for the project, including the proposed Visitor Screening Facility. The work of Task Order 30 involved the design of the Exhibit space in the

proposed Visitor Screening Facility. However, by letter dated October 9, 2003, the Contracting Officer directed that all work with respect to the Visitor Screening Facility be stopped. At the time, the schematic design and design development work for the Visitor Screening Facility (TO 28) was approximately 90% complete. The Exhibit design work (TO 30) was approximately 40% complete.

17. Although the Contracting Officer's letter of October 9, 2003 only referenced the Task Order 28 work, it was understood that since the Visitor Screening Facility was not going to be built the, Task Order 30 Exhibit design work was also to be stopped. The unpaid balance of Task Order 30, which totals $299,831.88, is not claimed herein.

18. The unpaid balance of Task Order 28, however, which totals $14,603.64, for which the Park Service has rejected billings, is claimed. This amount represents $120.26 still due for the Task Order 28, Mod. 5, Lighting Redesign Work and $14,483.38 still due for the Task Order 28, Mod. 6, Lodge Rehabilitation Design Work. In this regard, the October 9, 2003 stop work directive did not apply to the completion of the schematic design and design development for the remaining aspects of the project involving the security barrier system and the other landscaping work.

19. **Task Order 31:** Prior to the design work for the Visitor Screening Facility (and the Exhibit space therein) being stopped, Task Order 31 was issued to "enable the CM to provide services not specifically contracted for under other task orders and/or to attend previously unscheduled meetings with NPS or other personnel." However, the NPS has rejected billings under this Task Order for any services unrelated to meetings with the Commission of Fine Arts ("CFA") and/or the National Capital Planning Commission ("NCPC"). As a result, billings for

other meetings related to the design of the project were rejected and their remains an outstanding Task Order balance of $3,521.76. This amount is not claimed herein.

20. **Task Order 32:** Task Order 32 was also issued prior to the design work for the Visitor Screening Facility (and the Exhibit space therein) being stopped. It was to "enable the CM [i.e. Grunley Walsh] to prepare and present a revised schematic design to the Commission of Fine Arts (CFA) . . . and National Capital Planning Commission (NCPC) . . . ." Modification No. 1 to Task Order 32 was then subsequently issued as a follow up to the presentation made to NCPC to "enable the CM to prepare and present a maximum of four (4) preliminary design alternatives for the lodgehouse (screening/visitor center facility) to the National Capital Planning Commission . . . ." This modification also required the preparation of a cost estimate reflecting the latest preliminary design scheme for the project. The work related to this Task Order (and Modification No. 1) was substantially completed prior to the design work for the Visitor Screening Facility being stopped. However, the Park Service has rejected billings for the unpaid balance of this Task Order totaling $51,949.82. This amount is not claimed herein.

21. **Task Order 33:** Task Order 33 was the final design related Task Order issued by the Park Service. It too was issued before the design work for the Visitor Screening Facility was stopped. The Task Order involved two parts. The first part was to conduct a session relating to "green" design (i.e. environmentally friendly design) for the project. This part of the Task Order was completed and paid.

22. The second part of Task Order 33 involved the preparation of measured drawings (i.e. similar to as-built drawings) of the existing Monument Lodge structure. This work was also performed and completed. However, even though the drawings were submitted, the Park Service

has refused to pay for the drawings. As such, the Park Service has rejected billings for the unpaid balance of this Task Order totaling $6,389.00. This amount is claimed herein.

23. As the Park Service is aware, the scope of work required by Task Orders 19 through 33 did not include providing A/E services relating to: (1) the preparation of construction documents; (2) construction administration services; (3) attending construction phase meetings; and/or (4) providing additional design services beyond the scope of Task Orders 19 through 33. As the Park Service is also aware, the construction work required by Task Order 35 could not be performed without these additional A/E services.

24. Initially, funding for these additional A/E services was not a concern. This was due to the fact that when the design of the Visitor Screening Facility was stopped, there remained unexpended funds in several Task Orders, especially in Task Orders 28 and 30. For this reason, at the direction of the Contracting Officer, John M. Fox, and the Contracting Officer's Representative, Mike Donnelly, Grunley-Walsh was instructed to submit invoices for such services in payment applications for Task Order No. 28.

25. In accordance with this direction, the following invoices were submitted by Grunley-Walsh for payment as part of Task Order No. 28 billings:

| GW | A/E Invoices For CD, CA & Other Services | | | | |
|---|---|---|---|---|---|
| Req. Seq. | Date | Vendor | Inv. # | Service Type | Total Billed |
| TO 28-12 | 11/06/03 | Joseph R. Loring & Assoc | 60681 | Steam Tunnel DD | Omitted |
| TO 28-12 | 10/02/03 | Joseph R. Loring & Assoc | 60415 | Steam Tunnel DD | $3,765.47 |
| TO 28-12 | 09/16/03 | Joseph R. Loring & Assoc | 60223 | Steam Tunnel DD | $9,259.05 |
| TO 28-12 | 10/21/03 | Wiles Mensch | 18594 | Steam Tunnel DD | $22,189.53 |
| TO 28-12 | 06/17/03 | Wiles Mensch | 18203 | Steam Tunnel DD | $18,427.43 |
| TO 28-12 | 07/16/03 | Wiles Mensch | 18347 | Steam Tunnel DD | $12,284.96 |
| TO 28-12 | 09/05/03 | TT Cutts | MM2525.5-1 | Steam Tunnel DD | $12,500.00 |
| TO 28-12 | 10/03/03 | TT Cutts | MM2525.5-2 | Steam Tunnel DD | $6,250.00 |
| TO 28-13 | 03/30/04 | Olin Partnership | 2108394 | CD | $30,636.09 |
| TO 28-14 | 04/14/04 | Olin Partnership | 2108410 | CA | $6,290.56 |
| TO 28-14 | 04/14/04 | Olin Partnership | 2108411 | CA | $13,738.84 |
| TO 28-14 | 04/14/04 | Olin Partnership | 2108409 | Lighting | $209.42 |
| TO 28-14 | 04/28/04 | Olin Partnership | 2108464 | Lighting | $15,799.15 |
| TO 28-14 | 04/16/04 | TT Cutts | MM2526.03-1 | CA/CD | $3,072.00 |

| Req. Seq. | Date | Vendor | Inv. # | Service Type | Total Billed |
|---|---|---|---|---|---|
| TO 28-14 | 04/16/04 | TT Cutts | MM2526.02-1 | Constr. Phase Mtgs. | $1,192.57 |
| TO 28-14 | 04/22/04 | Wiles Mensch | 19065 | CD | $1,502.74 |
| TO 28-15 | 04/19/04 | Olin Partnership | 2108422 | CD | $13,949.95 |
| TO 28-15 | 05/27/04 | Olin Partnership | 2108527 | CA | $9,719.93 |
| TO 28-16 | 06/25/04 | Geo Concepts | 24004-5 | CD | $10,055.59 |
| TO 28-16 | 06/22/04 | Olin Partnership | 2108582 | Lighting | $1,047.20 |
| TO 28-16 | 06/21/04 | Olin Partnership | 2108581 | CA | $7,340.95 |
| TO 28-16 | 03/30/04 | Olin Partnership | 2108393 | Lighting | $5,543.69 |
| TO 28-17 | 07/29/04 | Geo Concepts | 246065-3 | Field Technician | $5,377.00 |
| TO 28-17 | 07/29/04 | Geo Concepts | 246065-3 | Principal | $62.00 |
| TO 28-17 | 07/21/04 | Olin Partnership | 2108629 | Lighting | $2,541.92 |
| TO 28-17 | 07/21/04 | Olin Partnership | 2108625 | CA | $10,477.77 |
| TO 28-17 | 07/21/04 | Olin Partnership | 2108624 | CD | $2,976.73 |
| TO 28-17 | 07/08/04 | Wiles Mensch | 19254 | CD | $7,228.97 |
| TO 28-18 | 08/25/04 | Olin Partnership | 2108750 | Lighting | $1,009.38 |
| TO 28-18 | 08/25/04 | Olin Partnership | 2108751 | CA | $3,821.62 |
| TO 28-18 | 07/31/04 | Fisher Marantz Stone | 9497 | Lighting Mock-up | $13,176.49 |
| TO 28-19 | 09/28/04 | Olin Partnership | 2108813 | CA | $8,374.00 |
| TO 28-20 | 10/21/04 | Olin Partnership | 2108890 | CA | $4,191.71 |
| TO 28-21 | 11/17/04 | Olin Partnership | 2108940 | CA | $7,129.04 |
| TO 28-22 | 12/13/04 | Olin Partnership | 2108996 | CA | $6,771.74 |
| TO 28-23 | 01/20/05 | Olin Partnership | 2109097 | CA | $7,496.55 |
| TO 28-24 | 02/22/05 | Olin Partnership | 2109159 | CA | $5,568.48 |
| TO 28-25 | 03/21/05 | Olin Partnership | 2109213 | CA | $6,524.89 |
| TO 28-25 | 03/21/05 | Olin Partnership | 2109212 | Lighting | $24.10 |
| TO 28-25 | 02/18/05 | TT Cutts | MM2526.02-9 | CA | $978.30 |
| TO 28-26 | 04/19/05 | Olin Partnership | 2109279 | CA | $5,158.01 |
| TO 28-26 | 04/19/05 | Olin Partnership | 2109302 | CA | $935.02 |
| TO 28-27 | 05/19/05 | Olin Partnership | 2109376 | Project Mtgs | $5,691.36 |
| TO 28-27 | 05/19/05 | Olin Partnership | 2109375 | CA | $13,903.46 |
| TO 28-28 | 06/17/05 | Olin Partnership | 2109423 | CA | $4,322.26 |
| TO 28-28 | 06/17/05 | Olin Partnership | 2109421 | CA | $19,163.99 |
| TO 28-28 | 06/17/05 | Olin Partnership | | Lighting | $4,979.90 |
| TO 28-29 | 07/21/05 | Olin Partnership | 2109536 | CA | $2,653.02 |
| TO 28-29 | 08/23/05 | Olin Partnership | 2109570 | CA | $14,395.26 |
| TO 28-29 | 10/21/05 | Olin Partnership | 2109571 | CA | $1,552.30 |
| | | **TOTAL INVOICED FOR ADDITIONAL A/E SERVICES** | | | **$371,260.39** |

26. The Park Service's payment of these invoices clearly established a course of dealing and an acknowledgement that such services represented a constructive change to the Contract for which Grunley-Walsh was entitled to payment. The invoices for additional A/E services far exceed the $371,260 for which payment has been authorized and processed. When

Grunley-Walsh attempted to submit these invoices as part of its requisitions for other A/E TOs, the requisitions were rejected and payment was denied.

27. By letter dated February 28, 2006 (see Certified Claim, EXHIBIT 2), Grunley-Walsh submitted a cost proposal for a portion of the additional A/E services. This letter has never been addressed or responded to by the Park Service.

28. Similarly, when Grunley-Walsh submitted change proposals for certain specific additional A/E services, they too were never addressed by the Park Service. The first of these proposals was submitted by letter dated August 12, 2005 (see Certified Claim, EXHIBIT 3). This proposal was in the amount of $70,698 and was for additional A/E services related to the redesign of the irrigation system required for the project to provide for a water source. When the Park Service made the decision not to utilize the Tidal Basin as a water source for the irrigation system, Grunley-Walsh was asked to provide a design for an alternative water source. This change work included coordination with various regulatory agencies, DCWASA and PEPCO and submissions for service class upgrades. It also required a redesign of the irrigation water supply drawings to include a new type of pump vault station, wiring layouts, and coordination of the final locations of the RPZ, vaults, and power source.

29. The second of these change proposals for additional A/E services was submitted by letter dated August 31, 2005 (see Certified Claim, EXHIBIT 4). This proposal was in the amount of $6,850 and related to engineering services requested by the Park Service to adjust the DCWASA Stop Log system. Pursuant to Grunley-Walsh's letter dated August 15, 2005 (see Certified Claim, EXHIBIT 4), the Park Service directed this change work to proceed on a T&M basis.

30. The third change proposal for additional A/E services was submitted by letter dated September 6, 2005 (see Certified Claim, EXHIBIT 5). This proposal was in the amount of $14,616 and related to design services / construction documents requested by the Park Service to provide the "wayfinding" signage.

31. The fourth change proposal for additional A/E services was submitted by letter dated September 8, 2005 (see Certified Claim, EXHIBIT 6). This proposal was in the amount of $63,725 and related to design services requested by the Park Service for: (1) redesign of the plaza behind the Monument Lodge; (2) design of additional wall lighting at the Monument Lodge horseshoe wall; (3) design documentation for the German American garden area; and (4) additional design work relating to the Sylvan Theatre plaza layout.

**Quantum Overview**

32. The amounts remaining unpaid for vendor invoicing associated with additional A/E services provided at the Park Service's direction, in connection with Task Order Nos. 19-33, is as follows:

33. **Geoconcepts Engineering / Geo Services Corp – $101,630.57:** These costs represent the unpaid construction engineering services performed on and off site, primarily for soil and concrete testing/analysis. In accordance with the meeting between Grunley-Walsh and the Park Service (i.e. John Fox and Mike Donnelly), Grunley-Walsh was instructed to invoice for these services in the Task Order 28 payment applications. As indicated in the Certified Claim, a portion of these invoices (i.e. $15,494.59) were paid. The claimed amount represents the unpaid balance for these services, which the Park Service recognized was a change to the Contract and to the requirements of Task Order 28.

34. **Joseph R. Loring & Associates - $14,070.46:** These costs represent: (1) an unpaid (omitted) invoice in the amount of $3,519.60 relating to design development work for the

relocation of an existing GSA steam tunnel that was expected to conflict with the proposed underground Visitor Screening Facility; and (2) $10,550.86 relating to preparation and coordination of design and construction documents for the electrical aspects of the irrigation system finally required by the Park Service. The Park Service was fully aware of these additional design services. In fact, as indicated in the Certified Claim, a portion of the invoices (i.e. $13,024.52) for the design work relating to the relocation of the GSA steam tunnel were previously paid.

35. The invoices relating to the irrigation design were initially submitted beginning in December 2004 (but were never paid). As such, Grunley-Walsh re-submitted the Loring invoices as part of the August 12, 2005 change proposal for the irrigation redesign work (see Certified Claim, EXHIBIT 3). The claimed amount represents the unpaid balance for these services, which the Park Service recognized was a change to the Contract and to the requirements of Task Order 28.

36. **Lynch & Associates, Ltd. - $17,621.00:** These costs represent: (1) unpaid services for the preparation and coordination of design and construction documents for the irrigation system finally required by the Park Service; and (2) construction administration services relating to the actual installation of the irrigation system. The Park Service was fully aware of these additional services and the ongoing effort that was required to finalize the design for the irrigation system. Lynch & Associates May 10, 2005 invoice as included as part of the August 12, 2005 change proposal for the irrigation redesign work (see Certified Claim, EXHIBIT 3). The claimed amount represents the unpaid balance for these services, which the Park Service recognized was a change to the Contract and to the requirements of Task Order 28.

37. **Olin Partnersip - $167,952.22:** These costs represent the unpaid services provided for: (1) preparation of construction documents/drawings; (2) the performance of additional design services as outlined in the September 8, 2005 Grunley-Walsh cost submission; (3) the performance of construction administration services; and (4) the attendance at numerous project meetings during the construction phase of the project. In accordance with the meeting between Grunley-Walsh and the Park Service (i.e. John Fox and Mike Donnelly), Grunley-Walsh was instructed to invoice for these services in the Task Order 28 payment applications. As indicated in the Certified Claim, a portion of these invoices (i.e. $243,938.29) were paid. The claimed amount represents the unpaid balance for these services, which the Park Service recognized was a change to the Contract and to the requirements of Task Order 28.

38. **Thornton Thomasetti Cutts / Group – $13,102.58:** These costs represent the unpaid invoices for services relating to: (1) design development work for the relocation of the existing GSA steam tunnel that was expected to conflict with the proposed underground Visitor Screening Facility; (2) the performance of construction administration services; and (3) the attendance at numerous project meetings during the construction phase of the project. In accordance with the meeting between Grunley-Walsh and the Park Service (i.e. John Fox and Mike Donnelly), Grunley-Walsh was instructed to invoice for these services in the Task Order 28 payment applications. As indicated in the Certified Claim, a portion of these invoices (i.e. $23,992.87) were paid. The claimed amount represents the unpaid balance for these services, which the Park Service recognized was a change to the Contract and to the requirements of Task Order 28.

39. **Wiles Mensch (n/k/a Edwards & Kelcey) - $98,325.38:** In part, these costs represent the unpaid invoices for services relating to: (1) design development work for the

relocation of the existing GSA steam tunnel that was expected to conflict with the proposed underground Visitor Screening Facility; (2) the preparation of construction documents / drawings; (3) the performance of construction administration services; and (4) the attendance at numerous project meetings during the construction phase of the project. In accordance with the meeting between Grunley-Walsh and the Park Service (i.e. John Fox and Mike Donnelly), Grunley-Walsh was instructed to invoice for these services in the Task Order 28 payment applications. As indicated in the Certified Claim, a portion of these invoices (i.e. $61,633.63) were paid. The claimed amount represents a portion of the unpaid balance for these services (i.e. $51,028.12), which the Park Service recognized was a change to the Contract and to the requirements of Task Order 28.

40. In addition, the amounts sought for Wiles Mensch include: (1) the design costs (i.e. $42,295) for the irrigation redesign work (including the design costs of Thornton, Thomasetti, Cutts – acting as their subconsultant); and (2) the design costs (i.e. $5,002.26) relating to the lowering of an existing DCWASA stop log system. The services performed for each of these aspects of change work were done at the direction of the Park Service, who was fully aware of the costs involved. In this regard, the Park Service has already paid, as a change to Task Order 35, the costs for the construction work relating to the DCWASA stop log system. When added to the other costs sought for Wiles Mensch, the total amount claimed for this vendor is $98,325.38.

41. **Joel Katz Design - $9,660.00:** These costs represent the unpaid invoices for preparing the construction documents relating to the "wayfinding" signage. As with the other A/E services, Task Order 28 did not include costs for the development of these construction documents. The Park Service was advised by letter dated April 20, 2005 of the additional costs

involved with this work, for which the Park Service agreed to pay. However, when the initial invoices for this work were submitted, they were never paid. As such, by letter dated September 6, 2006 (see Certified Claim, EXHIBIT 5) the invoices were resubmitted for payment. Again, the invoices were not paid and a modification for these services was not issued.

42. In addition to these claimed additional A/E Vendor Invoices, Grunley-Walsh also performed additional services, relating to the specific change proposals referenced herein, that have not been paid by the Park Service. The claimed costs for these services total $9,653.17.

43. Based on the above described unpaid amounts, the total sought in the Certified Claim and in this action are summarized as follows:

| | |
|---|---|
| A. Claimed Additional A/E Vendor Costs | $457,047.47 |
| B. Claimed Additional GW Costs | $9,653.17 |
| C. Claimed Unpaid Task Order Billings | $58,600.13 |
| **Total Claim** | **$525,300.77** |

**COUNT I**

44. The allegations contained in paragraphs 1 through 43 above are incorporated by reference as through fully set forth herein.

45. The Government has failed to pay for Contract/Task Order work performed for which payment is due and owing.

46. In addition, in accordance with the Contract Changes clause, the Government is required to provide an equitable adjustment for additional costs caused by any change to the performance of any part of the work. The Government has failed to comply with this Contract clause.

47. As a result of the foregoing and pursuant to the Contract, Grunley-Walsh is entitled to be paid $525,300.77 for unpaid Contract/Task Order work and additional A/E and Grunley-Walsh costs to perform change work.

48. As such, the Government is liable to Grunley-Walsh for $525,300.77, plus interest thereon as allowed by the Contract Disputes Act.

**WHEREFORE**, Plaintiff, Grunley-Walsh, LLC, demands judgment against Defendant, The United States of America, for award of damages in the amount of $525,300.77, plus such other and further relief as this Court deems just and proper, including interest as required by the Contract Disputes Act.

Respectfully submitted,

Roger C. Jones

**HUDDLES, JONES**
**SORTEBERG & DACHILLE, P.C.**
10211 Wincopin Circle, Suite 200
Columbia, Maryland 21044
(301) 621-4120
(301) 621-4473 (fax)
jones@hjpc.com

Counsel for Plaintiff,
Grunley-Walsh, LLC

DATED: 5-3-2007